Morning, may it please the court. My name is Eitan Kasteljanich. I am representing Holly Wilson in this appeal. This is similar to the last case in a funny, in an interesting way, which I will get to. This is also a Social Security and this is also an SSI disability appeal as well. Wilson is alleging that she's been disabled since April 1999, when she was 27 years old, as a result of a benefit. She filed her applications for benefits in 2003, when she was 31 years old. She's now 39 years old. I say this just as an illustration of how long this case has been taking to progress through the Social Security system. Ms. Wilson has had two hearings with the same Administrative Law Judge. The first hearing was remanded by the Appeals Council for a new decision, based in part on the ALJ's erroneous finding that a person who could only occasionally use one arm could still work as a production assembler. That's at page 539, that they said, no, that doesn't make sense. Give her a new hearing. The new decision came to the same conclusion, but he also went on to step five to find other jobs she could do, which were also assembly jobs, and I'll get to that. What makes this case similar to the previous case that was argued is the ALJ also found that Ms. Wilson was disabled through February of 2003, from 1999 through 2003. However, he also found that her substance abuse at that time was a factor material to her disability, and therefore benefits were not payable because it was a material factor. Back in that time period, she had a substance abuse problem, and so it was actually very hard to determine whether or not it was a material factor. Since then, she's had many years of sobriety. Since then, she's had many years of getting ongoing mental health treatment. There's a lot of new evidence in the file that calls into question whether or not the ALJ's that earlier time period makes sense because of the new evidence that he hadn't been available to him earlier. I want to now focus on what I see as the biggest issue, biggest error by the ALJ in this case. It involves the ALJ's finding that Ms. Wilson has, that her depression, which is her main primary mental health impairment, that it's not a severe impairment, that it does not more than minimally interfere with her ability to perform work-related activities, as the ALJ stated. This finding is not supported by substantial evidence. There is abundant evidence from everyone who's been treating her for these many years that shows that her depression actually has very significant impact on her ability to work. For the ALJ to say there's no impact whatsoever, and then to carry that through his entire analysis, simply, once again, it's not often that I stand up in court and say, there isn't even a scintilla of evidence to support that finding, but there is not even a scintilla of evidence to support it. There needs to be more than a scintilla in this legal standard. The bigger issue is not the substantial evidence issue, it's the legal error issue. It's the error of the ALJ in failing to properly consider and evaluate the medical evidence that shows that Ms. Wilson has a mental impairment that actually does impact her functioning. The main evidence about mental impairment in this case that the ALJ neglected to discuss is the evidence from Ms. Weston. Now, Ms. Weston was Wilson's treating psychiatric nurse for many years, treated her many times, prescribed her psychotropic medications, and on several instances stated her opinion that Ms. Wilson obviously has problems, would have problems working. Well, let's just go right there to Ms. Weston. In the last case, of course, I was questioning pretty heavily, counsel, about the standard because there was a veteran's disability determination unless they put clear and convincing evidence out there, and so I was trying to make sure as to whether it was clear and convincing. With Ms. Weston, the ALJ said she's not an acceptable medical source, she didn't conduct any cognitive testing, and that Lippman contradicted her testimony, who conducted the testing, and he said that your client had the ability to be productive in a semi-skilled job, and that your client has also worked in the past since the accident. Well, if I apply the standard or review to that, which is clear, convincing, I mean, clear, resolve these things by setting out detailed and summary about why he thought it was wrong, it's there. That's exactly why he didn't take that. So now, I guess I have to find out why is that wrong. Okay. I'm going to correct you nicely on this. All right. You can correct me even non-nicely, but I just feel like that the standard is what we have to do here, and he put out the logical reasons in my book. I'm actually, the correction I'm giving is that the standard is actually less clear than you're thinking that it is, because Ms. Weston is not an acceptable medical source. She's not a physician, she's not a psychologist, she's not a psychiatrist. As a result, the clear and convincing standard does not necessarily apply to her opinion. So I'm saying the standard here is actually, the standard is actually unclear. We'll accept that. Let's focus on the evidence, because I have the same concern. I looked at your brief. You cited the first two reasons the ALJ cited and didn't say anything about the last two reasons. So why is it that we shouldn't accept what the ALJ said, the specific reasons he gave? Okay. The first problem with the ALJ's rejection of Ms. Weston's opinion is that he never mentions any of her opinion. Now, it's a basic rule of social justice. You can't resolve conflicts in the evidence, but you can't resolve conflicts in the evidence by simply not ignoring them. Is it not true that Ms. Weston opined that the claimant was disabled and unable to work? Excuse me? I'm reading from the ALJ's opinion. Yes. She opined the claimant is disabled and unable to work. Kind of out there big and bold. Right. What's missing from the ALJ's decision is even one sentence, and I don't see any of Ms. Weston's objective clinical findings. There is not one sentence of clear... No. Rather than say he didn't talk about it, maybe I better offer up the objective clinical findings, because what he did say is that she was not an acceptable medical source. She had not conducted any cognitive testing. The claimant was able to work in the past, inconsistently with what he thought Ms. Weston was saying, and that Dr. Lippman conducted extensive testing, found she retained the ability to be productive. What's wrong with those reasons? Okay. The fact that she was able to work in the past doesn't tell us about her ability to work in the present, and that's always true. Now, perhaps I'm not going to tell... I have not treated her. I could not, and I don't think even someone who did could tell us why she is different today than she was 15 years ago. I mean, all the evidence says that she really hadn't changed much since, what, that auto... she was accidentally hit in 1988, wasn't that, when she claims cognitive mental problems from that accident? Right. And she says there's not been... the evidence seems to be there's not been much material change since 1988, and yet she's had numerous jobs since then, and she admits that some of those jobs she lost because of addiction to meth and alcohol, right? Well, I can't trace... and there is no need to trace exactly how she is currently functioning to what the source of it is. Let's talk about how she's functioning and what the testing shows. Ms. Weston found that she had cognitive slowing. This is a clinical finding. If you're a treating nurse practitioner who is prescribing medication to your client, to your patient, and you talk with them and meet with them to determine what medication do they need, is the medication working, you can tell when they are slow, when they're... you ask them a question and they can't respond in a normal... at a normal pace. She made clinical findings of cognitive slowing. That's extremely significant here, not mentioned. As I said... I'll say it again, no... none of her objective findings are mentioned. Now, I do discuss them in my brief. I don't have them... I can look to my brief, and go, this was one objective finding, this is another, this is another finding that Ms. Weston made, none of which were discussed by the ALJ. The ALJ also rejected the opinion of Ms. Young, who was another mental health therapist. She was the therapist. Ms. Weston was the prescribing nurse practitioner. Ms. Young opined that Ms. Wilson could not work, and she said it in two forms. One point, she can't work for the next six months, it again, can't work for six months. The ALJ's reasons for rejecting her opinion are not even legitimate, saying that, well, she only said six months, and therefore, it didn't go beyond six months. Well, she just didn't evaluate her more than... it was a year elapsed between the two evaluations. It doesn't say that she was able to work in the intervening six months. Well, the burden's on you to show her disability will prevent her from working for more than 12 months, right? That's true. We have Ms. Weston and we have Ms. Young both saying that that is true. Also missing from this discussion is the opinion of her treating doctor of osteopathy, Dr. Johnson. Dr. Johnson had clinical findings of explaining why she was having difficulty using her left arm. Clinical findings, none of which, not one, is mentioned by the ALJ. Once again, the critical thing here, the ALJ is the fact finder. The ALJ is the one who's supposed to review the evidence and resolve the conflicts. He didn't do that here. He didn't discuss the clinical findings from her treating osteopath, didn't discuss the clinical findings from her treating nurse practitioner, didn't discuss the clinical findings from her treating therapist. If you're not going to discuss the evidence, how can you explain why you weighed this as opposed to that? If he had discussed all of this evidence, I can accept that the reasons he gave for saying, well, I'll accept this instead of that, I think that could be seen as legitimate, could be even seen as convincing. But when you don't even discuss any of the evidence that doesn't comply, that counters the finding that you make, I think that he's failed in that basic duty to explain to us. That's the conclusion which is plainly contrary, the conclusion you're advocating for. Where is it said that he's required to give the detailed clinical findings leading to that conclusion? Well, in Lingenfelter, there's a discussion that you can't simply ignore evidence as a way of... Nothing says he ignores it. I mean, he cites Ms. Weston as saying, claim it is disabled, unable to work. He cites Dr. Johnson, claim it was unable to work due to her medical condition. It doesn't ignore the evidence? The statements that she's unable to work as a conclusory statement, and those statements by themselves don't, that's not going to tell us anything. I think that, you know, to simply say, well, Dr. Johnson said she can't work, I reject that. That's not enough. And then to give reasons for the rejection. You're not dealing with the reasons he gives for the rejection, you're criticizing the manner in which he makes his report. You're saying he needs more detail in offering up clinical findings. I'm not aware of that requirement. I ask you where the requirement comes from. I would say in Ling and Felter there is a requirement, an explicit requirement that in ALJ you cannot reject without explanation significant probative evidence, and you cannot resolve conflicts without explaining what is the conflicting evidence. You can't, he can't say, well, there's no, he actually says there's no objective evidence supporting Dr. Johnson's opinion, but he doesn't mention any of Dr. Johnson's objective clinical findings that do support his opinion. That's the problem here. It's a logical flaw in saying, I'm rejecting it because it's not supported by clinical objective findings, and then you don't mention the clinical objective findings that support it. I see that as a logical flaw. Well, I'm looking at his paragraph on Dr. Johnson. I don't see what you've just cited. I would like to reserve some time for rebuttal, and I'd be happy to do that. Take it. Maybe you can come back and answer that question. Okay. Thank you. Thank you. Thank you. Good morning. Jordan Goddard, appearing for the Commissioner. The ALJ addressed all the relevant evidence in this case. One of the most important pieces of evidence that appellate counsel has not given you or has not mentioned is Dr. Littman's opinion that there was malingering involved in this case. I think that's a very significant finding that has to be kept in mind whenever evaluating the evidence and the ALJ's treatment of this evidence. There's actually objective testing that was done that came back with invalid indicators that resulted in Dr. Littman opining that there was a malingering issue at play here. Specifically about some of the medical sources or treatment sources that have been raised, Dr. Johnson did opine that Plaintiff was disabled. However, the ALJ noted that only two months later in his treatment notes after he issued that opinion, he noted that with osteopathic manipulation, Ms. Wilson had improved by 75%. And reports of improvement following an opinion of disability are very relevant in determining the weight that that opinion is due. And the ALJ's notation that Ms. Wilson experienced significant improvement within two months of that opinion is sufficient to reject that opinion. It simply does not meet the Social Security Administration's requirement of a 12-month duration. Well, that relates to back pain, but now he seems to be basing it largely on her depression. Well, I don't believe that Dr. Johnson's opinion was based on depression. Please correct me if you have a different understanding of that. He was more concerned about the physical aspects. However, if we go over to some of the other individuals who provided treatment like Ms. Young and Ms. Weston, even there the ALJ gave good reasons. And there it's, I think, even more relevant that we have evidence of malingering that is recognized by the ALJ in an opinion that's given great weight. But beyond that, with regard to Ms. Young, it's very relevant that Ms. Young only She gave two of those opinions, but they're 17 months apart. So the appellant, Ms. Wilson, simply cannot establish disability based on those opinions. Additionally, the ALJ noted that there was conservative treatment being given by Ms. Young that wasn't really consistent with the degree of disability that she was claiming. We're seeing consistent sort of twice a month medication management and counseling sessions. We're not seeing dramatic increases in medication and response to decompensation, things like that. We really have conservative treatment that's not really consistent with the degree of dysfunction that Ms. Young indicates. And that is also an additional reason for rejecting it. Young's the mental health therapist. Is that right? Yes, that is correct. As well as Ms. She's really not an acceptable medical source either, then. She is not. And as well as Ms. Weston, they're both not acceptable medical sources. And I would like to actually address something that the court mentioned earlier regarding the standard for rejecting them. I believe earlier, not this year, but in 2010, I believe it was, this court issued the Turner opinion in which the Ninth Circuit clarified the standard. And, in fact, it's a germane reason, which is lower than the specific and legitimate standard, even. So I think when we look to the Turner decision for clarification, the reason simply has to be germane. And the ALJ has provided, in fact, more than one germane reason for both of these individuals. What did Lippman actually say about her malingering? It's a very interesting opinion. She had psychological and cognitive testing performed by several different individuals. We've got Dr. Dooley in 2001, then Dr. Brown in 2003, and then, again, Dr. Dooley later in 2003. And what he noticed was that there was, first of all, there was inconsistencies with regard to the degree of dysfunction. Specifically, Dr. Dooley's opinion that was given in late 2003 showed a degree of cognitive impairment that was inconsistent with the level of dysfunction that he saw in his own testing. Additionally, the PAI, the personality assessment inventory, came back with invalid indicators. In other words, it indicated that Ms. Wilson was exaggerating to the point where the results of the test were not reliable. Dr. Lippman did note that on one of the tests he gave, it did come back with a valid indicator. But in his opinion, when considering the evidence as a whole, considering not just the invalid indicator on the PAI, but the inconsistencies between the testing, as well as some failure to disclose relevant facts like drug and alcohol history and criminal history, that, as a whole, caused Dr. Lippman to opine that there was likely malingering at play here. As I understand it, frankly, the ALJ's Step 4 determination would have eliminated any reason to go to the Step 5 determination? Yes. Step 5 was essentially superfluous, belt and suspenders approach, basically. Right. So if she could be a production assembler, then she could obviously hold other jobs even beyond. That was her past work, right? You're right, Your Honor. Our regulations in the case law does establish that as soon as the claimant is found to be able to do past relevant work, that is sufficient for a finding that she's not disabled. And there was some question here about whether the vocational expert didn't follow the dictionary of occupational titles. Is that right? There is. And in this case, the expert gave a well-reasoned explanation. And, in fact, I'm not even sure that there really is a discrepancy, especially when you consider his explanation, that being that the limitation was in Ms. Wilson's non-dominant hand, her left hand. And it wasn't a complete disability. It was a partial loss of sensation that resulted in only occasional use of that hand. And the vocational expert explained that these jobs, even though they require a higher level of fingering and handling and reaching than occasional use would allow, typically these are performed using the dominant hand, the right hand. And the left hand is used as an assist or a guide. The requirement isn't really that the individual is ambidextrous and able to frequently reach, handle, or finger with both hands constantly throughout the day. And as the VE explained, assuming there is a variation from or a deviation from the Dictionary of Occupational Titles, he explained that the way the job is typically performed, using the dominant hand to meet those requirements and simply using the secondary hand as an assist means that the limitation would not prevent her from performing these jobs. Thank you. Thank you. Rebuttal. Assuming, for the sake of argument, that the ALJ was correct to come up with the residual functional capacity assessment he came up with, that assessment does not result in a finding of any jobs that Ms. Wilson can perform. At page 539 in the transcript, the Appeals Council already stated the rule that applies on this type of a situation, an individual limited to only occasional handling would be unable to perform work as a production assembler as it is described in the DOT. That's almost black letter law right from the transcript. Now the ALJ found that she could do that. He's wrong. The vocational expert testified she could do that. He's wrong. His testimony deviates from the DOT. The idea that a person, and let's get it down to Irene, we'll go to step 5 where he says she could be a fishing reel assembler. I've handled fishing reels before. I'm all thumbs with them. I cannot even imagine trying to assemble one with one functional arm, even if it's my dominant one. And being able to do that at a pace that's expected in a competitive work environment, the testimony is on its face rather ridiculous. You're not a VE yourself, are you? I'm not. I'm just judging from my own experience. Now the vocational expert, it's significant here that the vocational expert did not explain, did not acknowledge the deviation from the DOT, did not provide a persuasive explanation. And the government has argued that, well, in advance, he said, oh, my testimony will be consistent with the DOT. That's not good enough under Masaki. This case is on point with Masaki, and as a result of that error, even if you assume, and I disagree with ALJ's analysis on the medical evidence, the analysis of Dr. Johnson's opinion, you may not agree with me on those, but even if you accept that he properly analyzed the medical evidence, it still resulted in a residual functional capacity finding that does not result in her being able to perform any competitive work. And she should at least get a new hearing as a result of that. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Gilman (6th Cir.), Clifton, Nr Smith, Cjj